UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JORGE RODOLPHO DELGADO,

           Plaintiff,

   v.

ANDREW SAUL, Commissioner of Social Security,

           Defendant.

No. 1:19-cv-01254-GSA

**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

**(Doc. 29)**

## I.    Introduction

Plaintiff Jorge Rodolpho Delgado ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is now before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 19, 30, 32. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

## II.    Procedural Background

On September 22, 2015 Plaintiff filed an application for supplemental security income claiming disability beginning April 1, 2010[2] due to high blood pressure, a blood clot in his right eye, anxiety and depression. AR 179–87; 215. The Commissioner denied the application initially on March 2, 2016, and on reconsideration on June 1, 2016. AR 102–106, 109–112.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 8 and 10.

[2] At the administrative hearing Plaintiff's counsel amended the alleged disability onset date from April 1, 2010 to September 22, 2015 (the application filing date). AR 50.

1

"ALJ") on March 21, 2018.  AR 45–67.  Plaintiff was represented by counsel at the hearing.  AR 45.  On July 27, 2018, the ALJ issued a decision denying Plaintiff's application.  AR 18–34.  The Appeals Council denied review on April 29, 2019.  AR 9–14.  On September 9, 2019 Plaintiff filed a complaint in this Court.  Doc. 1.

### III.   Factual Background

#### A.   Plaintiff's Testimony

Plaintiff (born May 1965) lived in a single-story home with his sisters, adult niece and adult nephew.  AR 51.  He completed school through the 11th grade.  AR 51.  He also completed training as a Certified Nurse's Assistant.  AR 51.  Plaintiff  last worked in home care in 2007-- bathing, feeding, and medicating a client, and assisting him from his bed to his wheelchair. AR 52–53.

Plaintiff could do dishes and other chores for 15 minutes at a time (up to 2 hours a day) broken up by 15 to 20 minutes of sitting to alleviate back pain.  AR 54, 60.  He spent the rest of the day trying to alleviate back pain by walking which was minimally effective.  AR 54.   He could walk a block before needing to rest and needed to alternate between sitting and standing throughout the day.  AR 54.  He had a blood clot in the back of his right eye causing vision loss and peripheral vision problems, but he was able to read newspaper print.  AR 55.  He slept only 3 to 4.5 hours per night and didn't sleep during the day.  AR 55–56.   Reading books and attending medical appointments gave him anxiety.  55–56.

He interacted with friends and family, such as attending a recent barbecue for his friend's baby shower.  AR 56.  His sleep medication was not helpful.  AR 57.  Medication did provide some relief from anxiety, depression, pain and muscle spasms.  AR 57, 60.  He experienced no side effects from the medication.  AR 57.  He struggled with aggression, agitation and social isolation.  AR 58.  He attended therapy.  AR 58.  He could sustain focus for a maximum of 20 to 30 minutes at a time.  AR 59.   He experienced some memory problems but didn't require reminders for anything such as taking medication or doing chores.  AR 59.  He did not have a driver's license.  AR 61.

#### B.   Medical Records

Plaintiff's medical history includes treatment for various physical and mental conditions

including: low back pain, major depressive disorder, insomnia, lower leg pain, right shoulder pain, cervicalgia, diabetes, and hypertension.  AR 404–472, AR 608–715.  April 2015 treatment records reflect a depression rating of 7 out of 10.  AR 431.  In February 2016 Plaintiff was diagnosed with major depressive disorder after scoring a 25 on a depression screening questionnaire.  AR 408.  In March 2016 Plaintiff was diagnosed with moderate depression after scoring a 21 on a depression screening questionnaire.  AR 404–05.  He was prescribed paroxetine and trazodone for mental health, and naproxen and baclofen for chronic pain.  AR 404–05.  His depression diagnosis was confirmed in February 2018.  AR 608, 612.

A November 2014 physical examination noted intact ROM, pain with extension and pain with left lateral bend of the cervical spine.  AR 438.  A March 2015 physical exam noted spasms and tightness on his right anterior thigh.  AR 434.  A March 2016 physical examination noted full ROM in his back, tender spinal processes and paraspinal muscles, and negative straight leg raise.  AR 406.  A February 2018 examination noted full ROM in his back, tender spinal processes and paraspinal muscles, negative straight leg raise, limited abnormal ROM in his right shoulder, full PROM, 5/5 strength, abnormal range of motion due to pain, inability to complete Speed's and Jobes testing due to pain, and a positive Hawkins sign.  AR 609.

Plaintiff underwent physical therapy from November 28, 2014 to January 7, 2015.  AR 337–56.  At a January 7, 2015 physical therapy discharge appointment, Plaintiff reported significant improvement in prolonged sitting and standing tolerance, intermittent left pinky numbness and felt he was ready to be discharged from physical therapy with his home exercise program.  AR 351.  January 7, 2015 physical examination results reflect improvements in cervical spine flexion and extension as well as bilateral shoulder flexion, abduction, lateral rotation and internal rotation, all of which improved from 3+/5 on November 28, 2014 to 5/5 on January 7, 2015.  AR 351.  All physical therapy goals were met.  AR 351.

March 23, 2016 lumbar spine x-ray results reflected mild anterior osteophytic spurring of L3 through L5 vertebra consistent with mild degenerative changes and spondylosis.  AR 715. On June 17, 2016, Plaintiff treated with PA-C Harbour for right shoulder pain level 8 out of 10 radiating to his elbow and worsened by overhead activities and arm extension.  AR 678.  Examination

findings noted right shoulder limited/painful ROM, positive Hawkins test and inability to complete the Speed's or Jobes tests due to pain.  AR 679.  Plaintiff's pain medication was continued and he was referred for physical therapy.  AR 680.

Plaintiff underwent physical therapy again from July 26, 2016 to September 15, 2016.  AR 696, 514.  A September 15, 2016 physical therapy discharge examination noted "very good improvement with subjective pain goals. Pt is pleased with progress. He has met all goals established at eval. Improved LE strength, ambulatory distance, R hip flexor strength and abdominal activation with decreased pain level from 7/10 to 3/10. Good response to lumbar stabilization with increased abdominal activation." AR 541.  A September 28, 2016 examination noted full back ROM with some tenderness to palpation, negative straight leg raise, limited right shoulder ROM and inability to perform the Speed's and Jobes tests.  AR 676.  An October 24, 2016 right shoulder MRI revealed supraspinatus tendinosis and mild osteoarthritic changes, moderate hypertrophic spurring at the undersurface of the AC joint.  AR 711.  An October 24, 2016 MRI of the lumbar spine revealed mild lower lumbar degenerative disk changes at L4-L5, L5-S1 with mild posterior disk bulging.  AR 710.

Following an April 12, 2017 vision examination, Dr. Gunn diagnosed Plaintiff with scars of the posterior pole of chorioretinal of the right eye, type II diabetes mellitus without retinopathy, and hypertensive retinopathy of both eyes, grade I.  AR 693.

A July 10, 2017 cervical spine MRI revealed mild degenerative disk, uncovertebral facet spondylosis, and mild neural foraminal narrowing at C5-6 and C6-7.  AR 708.

In January 2018, Plaintiff was diagnosed with impingement syndrome of the right shoulder and unspecified rotator cuff tear/rupture of the right shoulder.  AR 618. A January 4, 2018 right shoulder x-ray revealed moderate narrowing glenohumeral joint, and minimal osteoarthritis acromioclavicular joint.  AR 495.

### C.    Medical Opinions and Prior Administrative Findings

On February 20, 2014, Dr. Verma conducted a physical consultative examination of Plaintiff in connection with a prior application for disability.  AR 306–12.  Dr. Velma identified a visual limitation (monocular vision) but identified no other physical limitations.  AR 311–12.

4

On February 19, 2014, Dr. Marselle conducted a psychological consultative examination of Plaintiff.  AR 295–303.  Dr. Marselle assessed no impairment as to Plaintiff's ability to: 1) understand, remember, and carry out simple one or two step job instructions; and, 2) accept instructions from supervisors.  AR 302–303.  Dr. Marselle assessed mild impairment as to Plaintiff's ability to: 1) perform detailed and complex instructions; 2) maintain regular attendance in the workplace and perform work activities on a consistent basis; and, 3) perform work activities without special or additional supervision.  AR 302–303.  Dr. Marselle assessed moderate impairment as to Plaintiff's ability to  maintain concentration, attention, persistence, and pace.  AR 303.  Finally, Dr. Marselle assessed marked limitations as to Plaintiff's ability to: 1) relate and interact with co-workers and the public; and, 2) associate with day-to-day work activity including attendance and safety.  AR 303.  He opined that Plaintiff's prognosis was good.  AR 302.

On February 2, 2015, Dr. Izzi performed a consultative psychological evaluation of Plaintiff.  AR 375–78.  Dr. Izzi opined as follows: 1) Plaintiff could perform a simple and repetitive type task on a consistent basis over an eight-hour period; 2) that his fluctuating mood disorder would moderately limit his ability to get along with peers or be supervised; 3) that his fluctuation of mood would limit his ability to perform a complex task on a consistent basis over an eight-hour period; 4) that he could respond to usual work session situations regarding attendance and safety issues; and, 5) that he could deal with changes in a routine work setting.  AR 377.  Dr. Izzi performed another psychological evaluation in January 2016, the results of which were consistent with the previous examination.  AR 398–401.

On January 5, 2016, Dr. Fabella completed a consultative physical examination of Plaintiff.  AR 389–395.  Dr. Fabella opined that Plaintiff could perform light work with occasional postural movements and occasional walking on uneven terrain.  AR 394.

Non-examining state agency medical consultants Drs. Douglas and Greene evaluated Plaintiff's medical file at the initial and reconsideration levels, respectively, concerning Plaintiff's physical residual functional capacity.  Both opined that Plaintiff could perform light work with some postural and environmental limitations (limited exposure to hazards, heights and uneven terrain).  AR 77–79; 94–96.

Non-examining state agency medical consultants Drs. Ikawa and Colludo evaluated Plaintiff's medical file at the initial and reconsideration levels, respectively, concerning Plaintiffs mental residual functional capacity. Both opined that Plaintiff retains the ability to: 1) understand and remember simple instructions; 2) carry out simple work instructions, maintain regular attendance, and sustain an ordinary routine without special supervision; 3) interact and relate appropriately with supervisors and co-workers, but would be best suited to work with minimal social demands and little public contact; and, 4) can adapt to routine changes in work. AR 76, 79–81, 92, 96–98.

On January 12, 2018, PA-C Harbour completed two questionnaires concerning Plaintiff's mental and physical RFC, respectively. AR 478–80; 481–84. He assessed twenty different mental abilities on a scale ranging from category I (no performance preclusion) to category IV (precludes performance for 15% or more of an eight-hour workday). He checked the boxes corresponding to category II (precludes performance for 5% of an 8-hour workday) for two abilities: 1) carry out detailed instructions, and 2) maintain attention, concentration for extended periods of time. AR 479. He attributed those limitations to medication side effects. AR 479. He checked the boxes corresponding to category I (no performance preclusion) for the other 18 abilities. AR 478–79. He opined that Plaintiff's prognosis was fair. AR 478. He opined that Plaintiff would be absent from work two days per month. AR 480.

As to Plaintiff's physical RFC, PA-C Harbour opined that Plaintiff could walk 2-3 city blocks, sit for 30 consecutive minutes, stand for 10 consecutive minutes, sit for 4 hours a day and stand/walk for 2 hours a day. AR 482. He further opined that Plaintiff would need a job that permits shifting between sitting and standing positions at will, would need to walk for periods of 2 minutes at 45-minute intervals, would need 10-15-minute breaks every 1-2 hours due to muscle weakness and pain, and would not require assistive devices to walk. AR 482. He opined Plaintiff could occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift more than 10 pounds. AR 483. He opined that Plaintiff had significant reaching, handling and fingering limitations, would be off task 5% of a workday, was capable of only low stress work due to depression, would have good and bad days and would be absent from work 2 days per month. AR

483.  He opined that the earliest date the limitations would apply is March 1, 2018.  AR 483.

### D.   Vocational Expert

A vocational expert ("VE") testified at the administrative hearing.  AR 61–65.  The ALJ questioned the VE regarding a hypothetical individual of Plaintiff's age, education and work history who could perform light work with the following exceptions: only occasional postural activities, no exposure to uneven terrain or unprotected heights, only simple/routine tasks, and only occasional contact with the public of a superficial nature.  AR 62.  The VE opined that such an individual could not perform Plaintiff's past work as a home attendant (which the VE categorized at the medium exertional level pursuant to the DOT).  AR 62.  The VE testified, however, that such an individual could perform other work existing in significant numbers in the national economy at the light exertional level: 1) cannery worker, 2) agricultural sorter, and 3) small products assembler. AR 63.  If a monocular vision limitation were added those jobs would not be available, but such an individual could perform the jobs of mail clerk and office helper (both existing in significant numbers).  AR 63.  If a condition were added that the individual would miss two or more days of work per month due to emotional regulation or mood control problems, all work would be precluded.  AR 64.

Plaintiff's attorney then posed a hypothetical to the VE, adding the following condition to the ALJ's second hypothetical: the individual would be limited to occasional contact with co-workers.  AR 65.  The VE testified that such a limitation would not affect his previous responses. AR 65.  Finally, if the individual required 10-15 unscheduled breaks every one to two hours, all work would be precluded.  AR 65.

### IV.   Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the

Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).  When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V.    The Disability Standard

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

8

sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**VI.    The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of September 22, 2015.  AR 20.  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; affective disorder; anxiety disorder; bilateral hypermetropia; and presbyopia.  AR 20.  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 20.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following limitations: only occasional postural activities; no exposure to uneven terrain or unprotected heights; only simple routine tasks; and, only occasional public contact of a superficial nature.  AR 22.  At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could not perform his past relevant work as a home attendant, which was medium exertional semi-skilled work.  AR 32.  At step five, in reliance on the VE's testimony, the ALJ

found that considering Plaintiff's age, education, work experience, and residual functional capacity, the following jobs existed in significant numbers in the national economy which Plaintiff could perform: 1) cannery worker, 2) agricultural sorter, and 3) small products assembler.   AR 33. Accordingly, the ALJ found that Plaintiff had not been under a disability since September 22, 2015. AR 33–34.

## VII.   Issues Presented

Plaintiff asserts three claims of error.   First, Plaintiff contends the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of examining physicians in favor of non-examining physicians.   Br. at 9, Doc. 19.   Second,  the ALJ failed to provide reasons supported by substantial evidence for rejecting the opinions of PA-C Harbour.   Br. at 18.   Third,  the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony.   Br. at 18.   Plaintiff's three claims of error will be addressed in turn.

### A.   Crediting Non-Examining Opinions Over Examining Opinions

#### 1.   Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).   The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).   "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).   In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence.  20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations).  An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons.  *Id.* at 830.   In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization.  20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2.   <u>Analysis</u>

Plaintiff contends the "The ALJ committed harmful error by failing to provide the requisite

'specific and legitimate' reasons for rejecting the MSS MRFC opinions of the three psychiatric examining physicians over the non-examining state agency reviewers." Br. at 9.

Initially it should be noted that examining and non-examining opinions did not in fact reflect disagreement regarding all of Plaintiff's mental abilities, nor did the ALJ entirely reject the former in favor of the latter. The ALJ gave "some" weight to the examining opinions of Drs. Marselle[3] and Izzi, while giving "great weight" to the non-examining opinions of Drs. Ikawa and Collado. AR 27. A review of the four doctors' mental RFC assessments on an ability-by-ability basis reveals areas of agreement between examining and non-examining opinions,[4] as well as areas of disagreement even among the examining opinions.

Plaintiff contends the ALJ erred in failing to incorporate Plaintiff's allegedly limited ability to accept supervision. However, only one of two examining physicians (Dr. Izzi) opined that Plaintiff was limited in this respect explaining that his ability "to be supervised in a work-like setting would be moderately limited by his mood disorder."[5] AR 377, 400. Examining physician Marselle, by contrast, opined that Plaintiff could accept supervision. AR 302. This contradicts Plaintiff's contention that the ALJ rejected the examining opinions in favor of non-examining

---

[3] The ALJ discounted the opinion of Dr. Marselle (dated February 19, 2014) because it addressed a period of time not at issue in the current claim. AR 25. Plaintiff's alleged disability onset date (as amended during the hearing, AR 50) was September 22, 2015 (the date of his application). That was the operative date the ALJ used for the purpose of her analysis. See AR 33 ("The claimant has not been under a disability, as defined in the Social Security Act, since September 22, 2015, the date the application was filed.") (citation omitted). Plaintiff does not dispute this basis for discounting Dr. Marselle's opinion.

[4] For example, all four physicians (examining and non-examining) opined that Plaintiff could understand, remember, and carry out simple instructions and/or perform simple and repetitive tasks. See AR 302 (Dr. Marselle's examining opinion); AR 377 (Dr. Izzi's first examining opinion); AR 400 (Dr. Izzi's second examining opinion); AR 81 (Dr. Ikawa's non-examining opinion); AR 97 (Dr. Collado's non-examining opinion). Additionally, examining physicians Marselle and Izzi opined that Plaintiff's ability to carry out complex instructions was limited. AR 303, 377, 400. Consistent with all opinions of record, the ALJ's RFC assessment limited Plaintiff to simple routine tasks. AR 22.

[5] Plaintiff incorrectly contends that "both *examining* psychological physicians, Drs. Marselle and Izzi" opined that Plaintiff's mood disorder would render his ability to work under supervision moderately to markedly limited. Br. at 13 (emphasis in original). Plaintiff cites AR 377 and AR 400 in support of that assertion. Those two records are in fact the first and second opinions of Dr. Izzi. Dr. Marselle's opinion, by contrast, is located at AR 303 and notes as follows: "6. Ability to accept instructions from supervisors: No Impairment."

opinions.  Three out of four physicians (including one of two examining physicians) opined that Plaintiff could accept instructions from supervisors or relate appropriately with supervisors.  AR 302 (Dr. Marselle); AR 81 (Dr. Ikawa); AR 97 (Dr. Collado).  Accordingly, the ALJ appropriately omitted that limitation from Plaintiff's RFC.  *See Thomas*, 278 F.3d at 957 (explaining that the opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record."); *Jamerson*, 112 F.3d at 1066 (explaining that affirmance is appropriate where the evidence reasonably supports two conclusions).

Plaintiff also contends that the ALJ erred in failing to incorporate Plaintiff's allegedly limited ability to "to associate with day-to-day work activity, including attendance and safety."  Br. at 13.  Examining physician Marselle opined that Plaintiff was markedly limited in that respect.  AR 303.  However, examining physician Izzi opined that "On a purely psychological basis, the claimant appears capable of responding to usual work session situations regarding attendance and safety issues."  AR 377, 400.  This further contradicts Plaintiff's contention that the ALJ adopted the non-examining opinions at the expense of the examining opinions.  The ALJ appropriately omitted this limitation from Plaintiff's RFC, consistent with three out of four opinions of record.  *See Thomas*, 278 F.3d at 957 and, *Jamerson*, 112 F.3d at 1066, above.

Finally, Plaintiff contends that the ALJ erred in failing to incorporate Plaintiff's allegedly limited ability to interact with coworkers and the public.  Br. at 13.   Dr. Marselle opined that Plaintiff had marked limitations in that area.  AR 303.  Dr. Izzi similarly opined that Plaintiff's ability to interact with peers was limited.  AR 377, 400.  Non-examining physicians Ikawa and Collado opined that Plaintiff could interact appropriately with co-workers but would be best suited to work with minimal social demands and little public contact.  AR 81, 97.  Notably, the ALJ did account for this limitation in part in her RFC assessment limiting Plaintiff to occasional public contact of a superficial nature.  AR 22.

Nevertheless, Plaintiff's ability to interact with co-workers was one area (indeed the only area) of limitation identified by both examining opinions, but not identified by either non-examining opinion.  The ALJ provided various reasons for discounting the opinions of Drs.

Marselle and Izzi.  Of particular relevance to Plaintiff's ability to interact with others, the ALJ noted that "the evidence reveals the claimant is able to get along with family and friends," and that "he regularly spends time with them socially."  AR 25.  Although the ALJ provided no citations in that portion of her opinion, she referenced her earlier residual functional capacity assessment which contains citations.  *See* AR 23 (noting that Plaintiff spends time with others daily, including family and friends, and citing Exhibit 6E and hearing testimony).  Plaintiff contends there is "no indication that Mr. Delgado is able to interact *appropriately with his family on any sustained basis* . . . Br. at 16 (emphasis in original).  To the contrary, on Plaintiff's adult function report (exhibit 6E, as cited by the ALJ) he answered "no" when asked if he has "any problems getting along with family, friends, neighbors, or others."  AR 246.  Moreover, his hearing testimony reflects that he interacted with friends and family such as attending a recent barbecue for his friend's baby shower.  AR 56.

Plaintiff cites contrary evidence that he spent over 50% of the time in his room and self-isolated due to panic attacks.  Br. at 16 (citing AR 58, 298, 302).  Although the ALJ's cited examples of Plaintiff's social functioning are not overwhelmingly persuasive, nor are Plaintiff's counter examples.  *See Jamerson*, 112 F.3d at 1066 (noting that affirmance is appropriate where the evidence reasonably supports two conclusions).  The ALJ made some accommodation in her RFC for Plaintiff's social limitations when limiting him to occasional public contact of a superficial nature.  The ALJ stopped short of adopting the examining physicians' opinions that Plaintiff had marked or moderate limitations in his ability to interact with peers.  Plaintiff's self-reported ability to interact with family and friends was a specific and legitimate reason supporting the ALJ's conclusion.

In sum, Plaintiff's overarching allegation of error in the ALJ's mental RFC assessment was that the ALJ rejected the examining opinions in favor of non-examining opinions.  This is not a wholly accurate contention.  In this regard, Plaintiff discussed evidence concerning three alleged limitations in his mental functioning, including: 1) ability to accept supervision; 2) ability to associate with daily work activities including attendance and safety; and, 3) ability to interact with co-workers and the public.  Of those three alleged limitations, the examining physicians' opinions were in fact split regarding the first two alleged limitations, and the ALJ provided specific and

legitimate reasons for rejecting the examining opinions as to the third alleged limitation. The ALJ's mental RFC assessment was therefore supported by substantial evidence.

## B.    Rejection of PA-C Harbour's Opinion

### 1.    Applicable Law

Physician's assistants are not "acceptable medical sources." 20 C.F.R. § 404.1513 (2013).[6] Rather, they are considered to be "other" medical sources. *Id*; 20 C.F.R. § 404.1513(d)(1) (2013). Unlike the opinions of treating physicians, the opinions of "other" treating sources are not entitled to special weight. 20 C.F.R. § 404.1527(c)(2) and (f)(1). An ALJ may reject the opinions of "other" sources, such as PA-Cs, by giving "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), superseded by regulation on other grounds; *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Factors used to evaluate the opinions of "other" medical sources include: (1) examining relationship; (2) length of treatment relationship and frequency of examination; (3) supportability of opinion; (4) consistency with the record; (5) specialization; and (6) other factors supporting or contradicting the opinion. 20 C.F.R. § 404.1527(c) and (f)(1).

### 2.    Analysis

Plaintiff contends "The ALJ committed harmful error by failing to provide reasons supported by 'substantial evidence' to reject long-term treating provider, PA-C Harbour's, two MSS opinions" that Plaintiff was limited to less than sedentary work. Br. at 18–21. Specifically, Plaintiff offers the following critique of the ALJ's reasoning:

> . . . the ALJ vaguely opines that: "The opinion and limitations are overall inconsistent with the evidence of record." (AR 29). The ALJ then cites to non-

---

[6] The Social Security Administration has adopted new rules applicable to claims filed on or after March 27, 2017, which expand the category of acceptable medical providers to include, among others, physician's assistants. 20 C.F.R. §§ 404.1502(a)(8) (2017); 416.902(a)(8) (2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The revisions do not apply to Plaintiff's claim, which was filed in 2015.

objective, non-medical findings such as the fact that Mr. Delgado was "present" for appointments, appearing "in no distress" and the fact that he engages in limited activities to maintain "personal care." The ALJ is clearly "playing doctor" here, using vague, undefined, subjective non-medical terms relating to the ALJ's "impression," when the bulk of the examining and treating physician evidence discussed above document continued issues with severe musculoskeletal pain which his examining provider determined more than minimally affect Mr. Delgado's ability to sustain work activity by significantly limiting his RFC.

Br. at 20.

The ALJ's reasoning for discounting PA-C Harbour's opinion was substantially more detailed than Plaintiff suggests. In addition to the two reasons Plaintiff disputes (maintaining personal care and appearing for appointments without distress), the ALJ offered several additional reasons supporting her conclusion that PA-C Harbour's opinion was inconsistent with the evidence of record, including: 1) "imaging studies of the claimant's lumbar spine and overall normal musculoskeletal examinations," 2) "He walked with a normal gate and without an assistive device," 3) "He reported being able to engage in many regular activities inconsistent with the noted limitations. This includes walk one mile, walk for travel, use public transportation . . .," 4) "His activities were not restricted during this time, rather it was routinely noted the claimant's back pain was well controlled," and 5) "evidence reveals his vision was improved with treatment." AR 29.

Plaintiff's discussion is non-responsive to the ALJ's articulated reasoning. The ALJ's reasoning for discounting PA-C Harbour's opinion was germane and was well grounded in the relevant regulatory factors. *See Molina*, 674 F.3d at 1112 (finding that inconsistency with other evidence of record is a germane reason to reject the opinion of a physician's assistant); 20 C.F.R. § 404.1527(c) and (f)(1) (identifying consistency and supportability as factors used to evaluate "other" medical sources, including physician's assistants).

### C.   **Rejecting Plaintiff's Testimony**

#### 1.   **Applicable Law**

16

1    The ALJ is responsible for determining credibility,[7] resolving conflicts in medical

2  testimony and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  A

3  claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental

4  impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

5

6    An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding

7  subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir.

8  2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective

9  medical evidence of an impairment that could reasonably be expected to produce some degree of

10 the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the

11 claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the

12 intensity and persistence of [the claimant's] symptoms to determine the extent to which the

13 symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

14

15    An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and

16 convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p

17 at *10.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully

18 corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in

19 determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261

20 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  The ALJ must

21 examine the record as a whole, including objective medical evidence; the claimant's representations

22 of the intensity, persistence and limiting effects of his symptoms; statements and other information

23 from medical providers and other third parties; and, any other relevant evidence included in the

---

[7] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  S.S.R. 16-3p at 1-2.

individual's administrative record.  S.S.R. 16-3p at 5.

### 2.   Analysis

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some degree of the symptom or pain alleged.  AR 23.  The ALJ found no evidence of malingering.  AR 23.  The ALJ was therefore required to offer clear and convincing reasons for rejecting Plaintiff's testimony.  *Burrell*, 775 F.3d at 1136.  The ALJ offered the following basis for rejecting Plaintiff's testimony:

> Despite his impairment, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant admitted activities of daily living including attend to his personal care and hygiene, manage medications, prepare meals, wash dishes, fold clothes, get outside daily (sometimes three times a day), use public transportation, walk for travel, go out alone, shop, count change, watch television (daily), regularly spend time with others, attend church, manage appointments and treatment and get along with others (Exhibits 5E, 6E; 2F and hearing testimony). Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The claimant's ability to participate in such activities undermines the claimant's allegations of disabling functional limitations.

> While the evidence reveals the claimant has vision deficits, it appears these are improved with treatment.  Additionally, at the hearing the claimant testified difficulty with peripheral vision only.  However he retains the ability to read and in fact indicated he does read. He has the ability to attend to his personal care and hygiene, prepare meals, manage appointments and medications, use public transportation, pay bills, and watch television. The record reveals the claimant has the ability to ambulate independently and without an assistive device (Exhibits 1F; 2F; 4F; 11F; and hearing testimony).

> As for the claimant's degenerative disc disease of the lumbar spine, the evidence reveals the claimant's objective findings during this time were overall unremarkable. Additionally the record reveals adequate pain management with medication and physical therapy treatments. The claimant regularly presents with normal range of motion of the lumbar spine, negative straight leg raise testing, a normal gait, and normal strength, tone and sensation throughout the lower extremities (Exhibits 12F; 13F, pages 13 to 14 17, 68, and 87; and hearing testimony).

> As for the claimant's mental health, evidence in the record reveals the claimant's symptoms are adequately improved with medication and counseling. He is regularly noted to present for appointments as pleasant, cooperative, alert, oriented and/or in no distress. The evidence reveals the claimant is able to manage his care, live with family, attend church, use public transportation, and regularly spends time with family and friends. In fact, Ms. Mason submitted a statement on behalf of the claimant wherein she reported spending time with the claimant

(Exhibits 9F; and 13F)

    It does not appear that the claimant sought out or required a specialist evaluation or treatment for his physical or mental health during this time

    Based on this evidence, I find that the claimant's subjective allegations are inconsistent with this medical evidence and other evidence in the record.

AR 23–24.

    Plaintiff contends this reasoning was not sufficiently clear or convincing for several reasons. First, Plaintiff contends the ALJ "vaguely and broadly incorporated repetitive language throughout the decision . . ." Br. at 22.  The Court does not find the ALJ's language vague or broad.  The ALJ provided four detailed paragraphs devoted to four distinct topics, each supported by numerous examples of clinical evidence, testimonial evidence, and citations to the same. Plaintiff is correct that the ALJ's language was at times repetitive, but the repetition did not undermine her reasoning. In the first paragraph the ALJ described Plaintiff's activities of daily living (ADLs) which she found generally inconsistent with his allegations of debilitating impairments. In addition, the ALJ provided three other paragraphs in which she repeated some of the same ADLs (in addition to other evidence) in support of her conclusion that those ADL's undermined the severity of Plaintiff's vision impairment, back impairment, and mental health impairment.  This repetition did not detract from the ALJ's reasoning.  To the contrary, it helped clarify which ADL the ALJ believed was relevant to each alleged impairment.

    Second, Plaintiff contends that the ALJ mischaracterized his testimony regarding his ADLs. Br. at 23.  Plaintiff emphasizes that, although he testified he does dishes, he noted that he only does them for 15 minutes at a time due to back pain, that his attention span maxes out at 20-30 minutes, and that he performs a maximum of two hours of chores daily.  AR 24.  Indeed, Plaintiff's ability to do chores, such as dishes, was not a clear and convincing reason supporting the ALJ's analysis because she did not account for Plaintiff's testimony concerning the limitations on his ability to do those chores.  However, the ALJ identified numerous other bases for discounting Plaintiff's

testimony concerning his mental and physical limitations, as quoted above.  Plaintiff does not acknowledge the vast majority of that reasoning.

Third, Plaintiff contends the ALJ overlooked his testimony that, although he reads, reading triggers panic attacks, agitation, aggression, and self-isolation.  Br. at 24.  Plaintiff contends this testimony undermines the notion that he is capable of interacting with co-workers and supervisors.  The ALJ did not mischaracterize Plaintiff's testimony regarding his reading.  The ALJ identified reading as one example of an activity that undermines the severity of his vision impairment.  The ALJ did not suggest Plaintiff's ability to read undermined the severity of his alleged social limitations.  As to his alleged social limitations, the ALJ identified the same reasoning discussed above, namely Plaintiff's self-reported ability to associate with friends and family.  AR 24.

Fourth, Plaintiff disputes the ALJ's statement that some of his activities require the same mental and physical abilities necessary for obtaining and maintaining employment.  Br. at 25.  Plaintiff contends that the ALJ failed to provide any specific examples of which activities translate into what type of employment.  *Id.*  An ALJ need not find that a claimant's activities meet the threshold for transferable work skills in order to discredit his allegations of disabling symptoms as inconsistent with his other testimony.  Rather, these are two alternative bases for discrediting a claimant's allegations.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (noting that the ALJ may rely on Plaintiff's daily activities to support an adverse credibility determination when those activities (1) "contradict [the claimant's] other testimony," or (2) "meet the threshold for transferable work skills."); *Valentine v. Commissioner Social Sec. Admin.,* 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . .  evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").  The ALJ appropriately

discredited Plaintiff's allegations as inconsistent with various other testimony indicative of physical and mental functioning, as quoted above.

Finally, Plaintiff takes issue with the ALJ's finding that he did not seek out specialist evaluation or treatment for his physical or mental health.  Br. at 25.   Although the Ninth Circuit has recognized conservative treatment as a sufficient basis for rejecting a plaintiff's subjective allegations of disabling symptoms,[8] other courts have questioned the practice of faulting a mentally impaired individual for exercising poor judgment in seeking treatment.  *See, e.g., Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989).  AR 26.  Here, the ALJ's comment about Plaintiff's failure to seek specialist treatment was a one sentence closing observation after four detailed paragraphs of independently clear and convincing reasoning for rejecting Plaintiff's subjective testimony.  As such, if the ALJ did commit error here, it was harmless.

**VIII.   Conclusion and Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Jorge Delgado.

IT IS SO ORDERED.

Dated:   __February 11, 2021__                    _____ /s/ Gary S. Austin
                                        UNITED STATES MAGISTRATE JUDGE

---

[8] *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).